```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EFCG, INC.,

        Plaintiff,

-against-

AEC ADVISORS, LLC, et al.,

        Defendants.

19-CV-8076 (RA) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By letter-motion dated September 29, 2020 (Dkt. No. 141), Plaintiff EFCG, Inc. (EFCG) seeks a protective order with respect to certain documents that are responsive to a subpoena (Dkt. No. 123-1) served by defendants upon EFCG's longtime information technology vendor, Technology On Premises (TOPIT), but that TOPIT withheld from production, at EFCG's request, as privileged. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

Sometime prior to September 18, 2020, EFCG produced a categorical privilege log with respect to the documents withheld by TOPIT (Dkt. No. 136-1), listing three categories comprising a total of 16 email chains and service tickets. By oral order issued on September 22, 2020, memorialized in a written order dated September 29, 2020 (Dkt. No. 137), the Court directed EFCG to file its protective order motion with respect to the withheld documents by September 29, 2020, and to submit the challenged documents themselves for *in camera* review by the Court.

On September 29, 2020, EFCG submitted its letter-motion, supported by the Declaration of Renee Ring (Ring Decl.) (Dkt. No. 142), whose title at EFCG is Chief Operating Officer but who is a licensed attorney, and the Transmittal Declaration of Robert A. O'Hare, Jr. (O'Hare Decl.) (Dkt. No. 143), EFCG's litigation counsel, attaching EFCG's "revised categorical privilege log" (Dkt. No. 138-2), which lists four categories of withheld documents comprising a total of 25 email

chains and service tickets. In addition, EFCG submitted the challenged documents for *in camera* review as directed, including the documents listed for the first time on the revised privilege log. The documents bear dates ranging from September 7, 2018 (four days before the individual defendants left EFCG on September 11, 2018, to form defendant AEC Advisors) through November 28, 2018. Most of them were exchanged among EFCG and TOPIT personnel, and discuss various technical projects (such as "monitor[ing] if someone is copying a large amount of data from the server to an external drive," prior to the individual defendants' departure, "shutting off" the individual defendants' accounts on the day of their departure, and setting up a "computer profile for Renee" several weeks later), without making any explicit references to legal advice, litigation, or trial preparation. Some of the Category 2 emails, however, were sent by or to various employees of Kroll, a division of Duff & Phelps (Kroll), which EFCG retained as its "forensic IT firm to investigate the company's computers, systems, devices, digital information, and data used by the individual Defendants" after their departure. Ring Decl. ¶ 13. Additionally, some of the Category 2 emails were copied to Frank Chernak, Esq., EFCG's outside counsel at Montgomery McCracken Walker & Rhoads LLP (MMWR), and/or to Ring herself.

All four categories were withheld (or redacted) based on the attorney client privilege and the work product doctrine, and all are described on the revised log as "communications in furtherance of or reflecting legal advice" regarding "EFCG's investigation of its claims in anticipation of litigation." In addition, the Category 1 documents (all dated September 11, 2018), are described as reflecting legal advice regarding "Defendants' departure from EFCG." EFCG argues that all of the challenged documents were properly withheld because EFCG "utilized" TOPIT to assist Kroll in conducting forensic investigations into defendants' alleged misconduct at the direction of counsel, "in anticipation of litigation," and "in furtherance of obtaining legal advice

to preserve and protect EFCG's legal rights and confidential and proprietary information." Ring Decl. ¶¶ 13-14.

On October 6, 2020, defendants filed a letter-brief (Def. Ltr.) (Dkt. No. 144), noting that Ring previously submitted a number of declarations in this action without identifying herself as an attorney or claiming any legal role at EFCG. Defendants assert that Ring was not on EFCG's payroll in any capacity prior to the individual defendants' departure and "never acted in the capacity as an attorney" in connection with the forensic investigations discussed in her most recent declaration. Def. Ltr. at 2. Additionally, defendants argue that since TOPIT was EFCG's "longtime IT vendor" rather than a firm specially engaged for litigation purposes, the withheld documents, which defendants have not seen, must be "business records of a third party kept in the regular course of business" and cannot constitute protected work product. *Id*. Finally, defendants point out that the work product doctrine does not provide "absolute" protection from discovery, and argue that they have a "substantial need" for documents shedding light on factual matters to which Kroll has access but their own expert does not, such as "the state of [EFCG's] computers after the termination of defendants' employment, and the dates/times on which passwords were reset or access to computers changed." *Id*. at 3-4.

## **Discussion**

Under federal common law, which governs privilege issues in federal question cases, *see* Fed. R. Evid. 501, the elements of the attorney-client privilege are well-settled:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the

purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Mach. Corp.,* 89 F. Supp. 357, 358-59 (D. Mass. 1950); *accord Obeid v. Mack*, 2016 WL 7176653, at *3 (S.D.N.Y. Dec. 9, 2016); *Gucci Am., Inc. v. Guess?, Inc.*, 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011); *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 138 (S.D.N.Y. 2004) (all quoting *United Shoe*, 89 F. Supp. at 358-59). The privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981); *accord Hollis v. O'Driscoll*, 2013 WL 2896860, at *2 (S.D.N.Y. June 11, 2013). Where the lawyer in question is a corporate officer with business as well as legal responsibilities, "the court must ascertain which hat the attorney was wearing during the allegedly privileged communication." *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 2020 WL 757840, at *4 (S.D.N.Y. Feb. 14, 2020) (quoting *Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019)).

The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). The doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation." *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947). However, it does not apply only to documents prepared by lawyers. The relevant inquiry is whether a document was prepared "in anticipation of litigation or for trial," which requires the court to determine whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998). While documents prepared for both litigation and business purposes generally enjoy work product protection, "documents that are

4

prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected, even if such documents might help in preparation for litigation. *Id.* Outside of core "opinion" work product protected by Fed. R. Civ. P. 26(b)(3)(B) – which is not at issue here – the protection provided by the work product doctrine is not absolute. A party may be entitled to non-opinion work product if it can show that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

"[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir. 1987) (internal quotations omitted); *see also United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The party asserting the privilege . . . bears the burden of establishing its essential elements."); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. 2019) (quoting *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008)) ("The party asserting work-product protection must demonstrate that the material at issue '(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'"). If an assertion of privilege is challenged, and court intervention is requested, the resisting party must "submit evidence, by way of affidavit, deposition testimony or otherwise, establishing only the challenged elements of the applicable privilege or protection, with the ultimate burden of proof resting with the party asserting the privilege or protection." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002), *supplemented by A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* 2002 WL 31556382 (S.D.N.Y. Nov. 15, 2002). "This burden can be met only by an evidentiary showing based on competent evidence . . . and cannot be 'discharged by mere

conclusory or ipse dixit assertions.'" *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (quoting *von Bulow*, 811 F.2d at 146); *see also Veleron Holding, B.V. v. BNP Paribas SA*, 2014 WL 4184806, at *2 (S.D.N.Y. Aug. 22, 2014) (concluding that Veleron failed to "submit evidence establishing the challenged elements of the privilege," and therefore "failed to sustain the claim of privilege").

The Court has carefully reviewed the parties' submissions – including the withheld documents themselves – with these principles in mind.

*Category 1*

The withheld documents must be produced. None of the emails in Category 1 was sent to or from any lawyer, any expert, or any consultant retained for litigation purposes. The Court notes, in this regard, that while the Ring Declaration does not specify the date on which Kroll was retained, it suggests that the retention occurred only *after* the individual defendants' "abrupt departure" from EFCG on September 11, 2018. Ring Decl. ¶ 13. The Category 1 emails are all dated September 11, 2018, thus suggesting that the EFCG and TOPIT personnel who sent and received them were not assisting in any Kroll investigation at that time. Moreover, these emails do not refer in any recognizable way to any lawyer, any expert, any consultant retained for litigation purposes, or indeed any prospect of litigation. Nor do they contain or reveal the content of any communication with EFCG's lawyers. Although the actions discussed in the emails – shutting off the computers of departing employees, deactivating their accounts, and changing the password to a shared email account – could have been directed by EFCG's counsel, the same steps (which are routine within many businesses when a senior-level employee departs) could also have been guided by EFCG's human resources personnel or other non-attorney staff.

Even if the EFCG and TOPIT personnel who sent and received the Category 1 emails were acting in accordance with advice given by EFCG's counsel – which EFGC has not established – that fact alone would not suffice to shield their emails from discovery under the attorney-client privilege. *See*, *e.g.*, *Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 77 (S.D.N.Y. 2010) (holding that the attorney-client privilege did not extend to emails among Gucci personnel, its outside counsel, and its trademark consultant, even though they discussed "the collection of evidence and development of a legal strategy for the Italy and United States lawsuits," because "these communications . . . do not contain the advice of counsel, nor do they contain a request for such advice"). As noted above, the Category 1 emails do not include or reveal *any* communications between EFCG and its counsel, much less communications containing legal advice or requesting such advice. The Category 1 emails therefore cannot be withheld on the basis of the attorney-client privilege. Nor are they protected by the work product doctrine, because EFCG has not established that they "reflect work performed by [EFCG's] agents in anticipation of litigation," *Gucci Am.*, 271 F.R.D. at 77, as opposed to routine work performed to protect EFCG's systems and data from potential misuse by departing employees, which – as noted above – is routine in many businesses.[1]

### *Category 2*

The withheld documents need not be produced. It is clear from the Category 2 documents, which are all dated September 19 and 20, 2018, that EFCG had by that time retained Kroll, and that Kroll was performing forensic investigations into the individual defendants' alleged

---

[1] According to Osterman Research, 96% of companies have a well-established process to disable access to the departing employee's mailbox; 95% disable access to other applications and sources of data used by the employee; 88% disable company-owned mobile devices; and 51% monitor post-employment access to "every application and source of data that the employee used." Osterman Research, Inc., "Best Practices for Protecting Your Data When Employees Leave Your Company" (December 2016) at 11, available at https://www.ostermanresearch.com/home/white-papers/ (last visited October 30, 2020).

misconduct. According to Ring, EFCG retained Kroll and commissioned these investigations "in anticipation of litigation," Ring Decl. ¶ 14, which is corroborated by the fact that EFCG sued the same defendants in New York Supreme Court, New York County, approximately one week later, on September 26, 2018, making some of the same allegations later made in this action.

As noted above, some of the Category 2 emails were sent by or to Kroll, and some were copied to EFCG's outside counsel or Ring.  Others were exchanged only among EFCG and TOPIT personnel. None of the emails (even those involving counsel) appear to contain or reveal the advice of counsel (or any request for such advice); consequently, the Category 2 documents are not protected from disclosure by the attorney-client privilege. However, all of them expressly discuss forensic investigations being planned or performed by Kroll, with the assistance of EFCG and TOPIT employees, concerning the individual defendants' alleged misconduct, including matters both pedestrian (for example, establishing appropriate passwords for the "forensic team") and substantive (for example, pinning down "a timeline on the events" surrounding the individual defendants' departures). The Category 2 emails are therefore protected, at present, by the work product doctrine. *See Gucci Am.*, 271 F.R.D. at 77 (doctrine protects emails that "reflect work performed by [Gucci's] agents in anticipation of litigation").

If and when EFCG presents expert testimony concerning Kroll's forensic investigations and results, defendants will be entitled to all of the "facts or data considered by" the expert in forming his or her opinions, *see* Fed. R. Civ. P. 26(a)(2)(B)(ii), including communications between EFCG's attorneys and the expert to the extent those communications "identify facts or data that the party's attorney provided and that the expert considered." Fed. R. Civ. P. 26(b)(4)(C)(2). Defendants are not, however, entitled to premature discovery concerning Kroll's forensic work – including the part that TOPIT played in that work – simply because "Kroll had access to this

information," Def. Ltr. at 4, and defendants' expert would like to have it as well. The Court notes that it is irrelevant to the work product analysis whether Ring was acting as EFCG's attorney in connection with the matters discussed in the Category 2 emails. *See* Fed. R. Civ. P. 26(b)(3)(A) (doctrine covers material prepared "by or for [a] party or its representative" in anticipation of litigation or for trial); *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine . . . it is not in fact necessary that the material be prepared by or at the direction of an attorney").

### *Category 3*

According to EFCG's counsel, the Category 3 documents, consisting of TOPIT service tickets covering various dates from September 7 to December 28, 2018, have been redacted, rather than withheld entirely. O'Hare Decl. ¶ 5. However, two of the tickets (# 1495736 and # 1497148) are dated later than September 25, 2018 – meaning that these are the two that were listed for the first time in EFCG's revised log on September 29, 2020 – and do not reflect any redactions. The Court is not certain whether they were produced in their entirety (in which case they should not have been logged) or were withheld in their entirety (in which case they should have been logged at the outset).

On the assumption that tickets # 1495736 and # 1497148 were withheld in their entirety, the Court concludes that they are not protected by the attorney-client privilege, but that portions are protected by the work product doctrine because those portions reflect work performed by EFCG's attorneys, experts, and other agents in anticipation of litigation. With respect to # 1495736, EFCG may redact the text following the headings "Discussion," Internal," and "Resolution," but must produce the remainder of the document. With respect to # 1497148, EFCG may redact the text following the headings "Discussion" and "Resolution," but must produce the remainder of the

9

document. The Court declines to find that EFCG has waived the work product doctrine altogether as a result of its failure to log these tickets until September 29, 2020.

The remaining tickets in Category 3 have been marked to indicate what portions were redacted. Ticket # 1487794 was opened on September 7 and closed on September 11, 2018. It does not include or reveal any communications between EFCG and its counsel. Moreover, EFCG has not shown that it reflects work performed in anticipation of litigation. The Court therefore concludes – for many of the same reasons discussed above in connection with Category 1 – that Ticket # 1487794 must be produced in its entirety. Ticket # 1488798, although opened somewhat later, on September 17, 2018, similarly appears to reflect routine IT work ("Computer Profile set up for Renee"), which may shed light on when Ring assumed the various responsibilities she describes in her declaration, but does not reveal what investigatory work she (or others) performed in anticipation of litigation. Ticket # 1488798 must also be produced in its entirety.

Ticket # 1489114, opened on September 20, 2018, includes two redactions that appear unwarranted. The first redacted sentence reveals that EFCG planned to "recycle[e]" one of the individual defendant's devices – a step that could not be part of any litigation-oriented investigation. Similarly, the second redacted sentence, stating that an EFCG employee was "discussing with the powers that be to make a determination on how to proceed," does not reveal any investigatory work. Ticket # 1489114 should therefore be produced without redaction.

### *Category 4*

The seven email chains in Category 4 are dated from September 28 through November 28, 2018, and were logged for the first time on September 29, 2020. Although no Kroll personnel (or counsel) sent or received any of the category 4 communications, and no legal advice is discussed, a portion of one of the emails (reproduced in several email chains) reveals information about

Kroll's forensic work and is therefore protected by the work product doctrine. EFCG may redact the first paragraph of the email from Dimitri Milionis of EFCG to Greg Melli-Jones and Chris Payne of TOPIT on September 28, 2018 (beginning with "Hi guys" and ending with "below"). The remainder of that email must be produced, along with its replies and forwards. EFCG may withhold, as work product, the emails between Milionis and Payne on November 28, 2020, which discuss work that was performed (or planned) at the direction of "EFCG's lawyer" and that appears – based on the nature of the tasks discussed – to relate to the issues raised in the state court lawsuit and in this action. Once again, the Court declines to find that EFCG has waived the work product doctrine altogether as a result of its failure to log these email chains until September 29, 2020. Should EFCG make similar mistakes in the future, however, the outcome could be different.

## Conclusion

EFCG's protective order motion (Dkt. No. 141) is GRANTED IN PART AND DENIED IN PART. EFCG must promptly produce all of the Category 1 documents. It need not produce any of the Category 2 documents. Within Category 3, EFCG must produce redacted copies of ticket # 1495736 and ticket # 1497148, in accordance with this Order, and unredacted copies of ticket # 1487794, ticket # 1488798, and ticket # 1489114. Within Category 4, EFCG must produce redacted copies of the email chains that include the September 28, 2020 email from Milionis to Melli-Jones and Payne described above, in accordance with this Order, but need not produce the emails between Milionis and Payne on November 28, 2018.

Dated: New York, New York
October 30, 2020

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**